UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JACKIE K. SMITH,

                                       Claimant,

-against-                                    Index No.
                                                                  03-CV-1033

CONSUMER CREDIT COUNSELING
SERVICES OF CENTRAL NEW YORK

                                       Defendant.

_____

STATEMENT OF MATERIAL FACTS

SUBMITTED IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Hon. Norman A. Mordue

## **FACTUAL BACKGROUND**

1.	Plaintiff was hired by Consumer Credit Counseling Services (hereinafter "CCCS") as a Customer Service Representative in May of 1996. Exhibit "I", p. 18.

2.	Plaintiff applied for and was promoted to the position of Counselor in April of 2001. Upon her promotion, Plaintiff began reporting directly to John Grady, CCCS's branch manager. Exhibit "I', pps. 50-54, Exhibit "J", pps. 4, 8-9.

3.	In March of 2002, Mr. Grady discovered that Plaintiff was not entering client information into the computer within the time required by company policy. Exhibit "J", pps. 16- 19, 31, 44.

4.	Mr. Grady counseled Plaintiff with respect to the issue and Plaintiff indicated that she understood and would improve her performance. Exhibit "I", pps.110-118 and Exhibit "J", pps 14-17.

5.	Plaintiff received an unfavorable performance review in May of 2002 which was based, in part, on her failure to timely enter client information into the computer. Exhibit "R", Exhibit "I", pps.110-118 and Exhibit "J", pps 14- 17.

6.	In June of 2002, Plaintiff was placed on a Performance Improvement Plan (PIP) due to her continued failure to timely enter client information into the computer. Exhibit "S", Exhibit "J", pps. 27-28.

7.	The PIP included a thirty (30) day probationary period and provided that the failure to satisfy the terms of the PIP could result in separation from employment. Exhibit "S".

8.	On July 2, 2002, CCCS determined that Plaintiff had begun hiding incomplete, overdue files in her desk drawer and made the decision to terminate Plaintiff's employment. Exhibit

"J", pps. 30 - 32, 34-39, 48-49; Exhibit "K", p. 33.

9.  Plaintiff's employment was terminated the morning of July 3, 2004.  Exhibit "J", pps. 48-49,  Exhibit "I", pps. 173 - 185, Exhibit "K", p. 33.

## POINT I

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.  Plaintiff's EEOC charge consists solely of a claim for race discrimination based on a number of alleged instances of disparate treatment. Exhibit "A", Exhibit "I", pps. 227-230.

11.  Plaintiff's EEOC charge does not contain claims for, or allegations supportive of, a cause of action for retaliation or harassment.  Exhibit "A".

12.  The instant Complaint is comprised of a cause of action for retaliation and harassment.  Exhibit "D", Exhibit "I", pps. 227-230.

13.  Plaintiff's Complaint does not contain a cause of action for, or any allegations supportive of, a claim for discrimination based on disparate treatment. Exhibit "D", Exhibit "I", pps. 227-230.

14.  When responding to the EEOC Complaint, CCCS submitted a Statement of Position (by way of its former counsel) which provided, in pertinent part, as follows:

> As we understand [Plaintiff's] Charge of Discrimination, she has alleged violations of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law.  More particularly, [Plaintiff] has alleged claims of race and color discrimination.  **It is further our understanding the [Plaintiff] has not alleged claims of harassment or retaliation**.  If we are incorrect, please advise so we may supplement our response.

Exhibit "Q".

15.  Plaintiff never amended or supplemented her EEOC Complaint.  In fact, she did not respond in any fashion.

3

## POINT II

### A. PLAINTIFF'S CLAIM OF RETALIATION

16. Plaintiff testified that sometime in April, more than two months before she was terminated, she told Mr. Grady that she wanted him to "ease off" on his comments about CCCS's clientele.  Exhibit "I", pps. 144 - 146.

17. Plaintiff testified that during that alleged conversation she did not specifically state that she was referring to comments about the clients' race or that she perceived Mr. Grady's comments to be racially derogatory.  Exhibit "I", pps. 144 - 146.

### B. CCCS's NON-DISCRIMINATORY EXPLANATION FOR TERMINATING PLAINTIFF'S EMPLOYMENT

18. In March of 2002, Plaintiff became ill and was out of the office for an extended period of time.  Exhibit "I", p. 118.

19. During that time, Mr. Grady discovered that Plaintiff was not entering client information into the computer within 48 hours as per CCCS's company policy. Exhibit "J", p. 17, 31, 44.

20. CCCS's customers complained that their files had not been processed and the issue appeared on error reports received from counseling assistants.  Exhibit "J", p. 50.

21. Mr. Grady discussed the problem with Plaintiff when she returned to work. Exhibit "I", pps. 117-118, Exhibit "J", pps.16-17.

22. Plaintiff agreed with Mr. Grady and advised that she would "try to do better". Exhibit "I", pps. 118-119.

4

23. The untimely entry of client information continued and, as such, became the subject of an unfavorable performance review in May of 2002. Exhibit "R", Exhibit "I", pps.110-118 and Exhibit "J", pps 15- 17.

24. In June of 2002, John Grady discovered files on Plaintiff's desk containing information which Plaintiff had again failed to timely enter into the computer. Exhibit "J", pps 27-28.

25. Mr. Grady further discovered that Plaintiff had failed to prepare the client files to be transferred to data processing. Exhibit "J", pps 27-28.

26. As such, on June 27, 2002, Plaintiff was placed on a Performance Improvement Plan (PIP), which included a thirty (30) day probationary period and required Plaintiff to "complete" her files (meaning that the client information was to be entered into the computer and transferred to data processing) within 48 hours. Exhibit "S".

27. The PIP provided that, if any portion of the improvement plan was violated during the probationary period, discipline, including separation from employment may occur. Exhibit "S".

28. Shortly after Plaintiff was given the PIP, Mr. Grady asked Plaintiff to prepare a weekly report providing an accounting of the number of files for which Plaintiff was responsible. Exhibit "J", pps. 30-31, 35.

29. Mr. Grady reviewed the files on Plaintiff's desk and was unable to account for a number of the files contained in the weekly report. Exhibit "J", pps. 30-31, 35.

30. CCCS made the decision to terminate Plaintiff's employment on July 2, 2002. Exhibit "J", pps. 48-49.

31. Plaintiff's employment was terminated on the morning of July 3, 2002. Exhibit "I", pps. 173, see also Exhibit "K", p. 33.

32. At the time of Plaintiff's termination, Mr. Grady confirmed that the missing files had been locked in Plaintiff's desk. Exhibit "I", pps 173-179, Exhibit "J", pps. 30-31, 36-39.

## POINT III

## PLAINTIFF'S CLAIM OF HARASSMENT

33. In her Interrogatory Responses, Plaintiff named John Grady, Sheryl Bowman, Pat Hauser, Cheryl McGinley, Linda Murawski, Jennifer Lindsay, Kathy Astletine and Gary Malone as witnesses.

34. With respect to racially derogatory remarks that would give rise to a hostile work environment claim, Plaintiff's witnesses testified as follows:

- Kathy Astletine - never witnessed any remarks to Plaintiff by John Grady which were racially derogatory. Exhibit "L", p. 31;

- Jennifer Lindsay - never heard John Grady make a derogatory remarks about black clients. Exhibit "M", pps. 42-43;

- Gary Malone - did not recall any derogatory remarks about black clients. Exhibit "N", p. 49;

- Pat Hauser - never heard John Grady make any remarks about black persons and never heard remarks about people who lived on the south side. Exhibit "O", p. 20;

.
- Cheryl McGinley - John Grady never made a racist remark in Plaintiff's presence. Exhibit "P" pps. 19-20.

## POINT IV

## PUNITIVE DAMAGES

35. At the time Plaintiff was hired, she received an employee handbook which set forth CCCS's policy against racial discrimination. Exhibit "I", pps. 25-28.

36. Plaintiff was aware of the procedure for filing a grievance for racial discrimination but never did so. Exhibit "I", 34, 83-84, 96.

Dated: October 15, 2004

                                                                       _____
Lauren M. Miller
Bar Roll No. 508658
PINSKY & SKANDALIS
Attorneys for Defendant
State of New York
Office and P.O. Address
5790 Widewaters Parkway
P.O. Box 250
Syracuse, New York 13214-0250
(315) 446-2384

TO:    George S. Mehallow
          Bar Roll No. 507261
          Attorney for Plaintiff
          2700 Bellevue Avenue
          Syracuse, New York 13219
          (315)478-1583