UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JACKIE K. SMITH,

                                        Claimant,

                    -against-

                                                    Index No.
CONSUMER CREDIT COUNSELING                          03-CV-1033
SERVICES OF CENTRAL NEW YORK

                                        Defendant.
_____

DEFENDANT'S MEMORANDUM OF LAW

SUBMITTED IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Hon. Norman A. Mordue

**Table of Contents**

**Name of Case**                                                                                           **Pages**

*Alfano v. Costello*, 294 F.3d 365 (2d Cir.2002)                                                            9, 10

*Bey v. Welsbach Elec. Corp.*, 38 Fed Appx. 690 (2d Cir. 2002)                                             3

*Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397
(2d Cir.1993)                                                                                               3, 4

*Francis v. City of New York*, 235 F.3d 763 (2d Cir.2000)                                                   2

*Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367,
126 L.Ed.2d 295 (1993)                                                                                      9

*James v. Newsweek, Inc.,* 213 F.3d 626 (2d Cir. 2000)                                                      7

*Joseph v. Price Costco*, 100 Fed.Appx. 857, 2004 WL 1292686 (2d Cir)                                       4

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118,
144 L.Ed.2d 494 (1999)                                                                                      11

*Luciano v. Olsten Corp.,* 110 F.3d 210 (2d Cir.1997)                                                       11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)                                                                        7

*Negron v. Rexam, Inc.,* 104 Fed.Appx. 768, 2004 WL 1496878 (2d Cir. 2004)                                 10

*O'Hara v. Memorial-Sloan Kettering Cancer Center*, 27 Fed. Appx. 69,
 2001 WL 1512295 (2d Cir.)                                                                                  4

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75,
118 S.Ct. 998, 140 L.Ed.2d 201 (1998)                                                                       9

*Perry v. Ethan Allen, Inc*., 115 F.3d 143 (2d Cir.1997)                                                    10

*Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 120 S.Ct. 2097,
147 L.Ed.2d 105 (2000)                                                                                      7

*Ruiz-Valera v. Association of the Bar of City of New York*, 91 Fed.Appx.
168, 2004 WL 234873 (2d Cir.)                                                                               6

2

## <u>Table of Contents Continued</u>

| <u>Name of Case</u> | <u>Pages</u> |
|---|---|
| *Skierkiewicz v. Sorema N.A.*, 122 S.Ct. 992 (2002), 534 U.S. 506 (2002) | 2 |
| *Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) | 4 |
| *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir.1997) | 6 |

## POINT I

**PLAINTIFF'S CLAIMS FOR HARASSMENT
AND RETALIATION ARE SUBJECT TO DISMISSAL DUE
TO PLAINTIFF'S FAILURE TO EXHAUST HER ADMINISTRATIVE
REMEDIES AND ARE NOW TIME BARRED**

It is well settled that exhaustion of administrative remedies through the EEOC is an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir.2000).

Here, Plaintiff's EEOC charge consisted solely of a claim for race discrimination based on a number of alleged instances of disparate treatment. Plaintiff's EEOC charge did not contain a claim for retaliation or harassment.

The instant Complaint, on the other hand, is comprised of two causes of action, those being claims for retaliation and harassment[1]. Plaintiff's Complaint does not contain a cause of action for, or any allegations supportive of, a claim for discrimination based on disparate treatment. Given that Plaintiff failed to exhaust her administrative remedies with respect to the only two causes of action alleged in the Complaint, the Complaint must be dismissed in its entirety.

---

[1]Although Plaintiff's Complaint does not specifically contain a cause of action for harassment, the Complaint does allege that Plaintiff was subjected to a series of racially derogatory comments from John Grady, her former supervisor, an allegation which, pursuant to *Skierkiewicz v. Sorema N.A.*, 122 S.Ct. 992 (2002), 534 U.S. 506 (2002), arguably gives rise to a harassment claim.

Likewise, the instant Complaint does not specifically set forth a cause of action for retaliation (in fact, the word "retaliation" does not appear anywhere in the Complaint). The Complaint does, however, allege that Plaintiff asked her supervisor, John Grady, to stop making racially discriminatory comments and that Plaintiff began to receive adverse employment actions from Mr. Grady in April of 2002. Thus, although the alleged adverse employment actions are unspecified, pursuant to *Skierkiewicz v. Sorema N.A.*, 122 S.Ct. 992 (2002), 534 U.S. 506 (2002), the Complaint arguably contains factual allegations supportive of a retaliation claim.

Oftentimes, Plaintiffs who have failed to exhaust their administrative remedies offer excuses for their failure to do so.  For instance, in *Bey v. Welsbach Elec. Corp.*, 38 Fed Appx. 690 (2d Cir. 2002), the Plaintiff claimed that he was turned away by the EEOC.  The Second Circuit held that Plaintiff's proffered excuse was not sufficient to justify his failure to exhaust his administrative remedies.

The instant Plaintiff had not only the opportunity to assert claims for harassment or retaliation in her EEOC charge, but was virtually invited to do so.  When responding to the EEOC Complaint, CCCS submitted a Statement of Position (by way of its former counsel) which provided, in pertinent part, as follows:

> As we understand [Plaintiff's] Charge of Discrimination, she has alleged violations of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law.   More particularly, [Plaintiff] has alleged claims of race and color discrimination.  **It is further our understanding the [Plaintiff] has <u>not</u> alleged claims of harassment or retaliation**.  If we are incorrect, please advise so we may supplement our response.

Plaintiff never sought to amend or supplement her EEOC Complaint.  In fact, she did not respond in any fashion.  Thus, Plaintiff did not assert a claim for harassment (due to a hostile work environment) or retaliation and, as such, has failed to exhaust her administrative remedies with respect to the only claims asserted in the instant Complaint.

The foregoing rule (requiring the exhaustion of administrative remedies), like most rules, has its exceptions.  *Butts v. City of New York Dep't of Hous. Pres. & Dev*., 990 F.2d 1397, 1402-03 (2d Cir.1993). However, the exception is not presently applicable.

In *Butts,* the Second Circuit held that claims not raised in an EEOC charge were nonetheless viable when those claims are sufficiently related[2] to the allegations in Plaintiff's Complaint.  The *Butts* Court identified three situations in which the exception would apply, those being: where (1) the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;(2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and (3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Butts v. City of New York Dep't of Hous. Pres. & Dev*., 990 F.2d 1397, 1402-03 (2d Cir.1993) (superceded on other grounds); *see also, Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003).

The Courts have held that, when considering whether the first exception (which is implicated when the conduct complained of would fall within the scope of the EEOC investigation) is applicable, the focus should be on the factual allegations made in the EEOC charge itself describing the discriminatory conduct about which a plaintiff is grieving. *See, O'Hara v. Memorial-Sloan Kettering Cancer Center*, 27 Fed. Appx. 69 (2d Cir. 2001), 2001 WL 1512295 (2nd Cir.), [holding that the scope of an EEOC investigation cannot reasonably be expected to encompass retaliation when Plaintiff failed to put the agency on notice that she had engaged in the type of protected activity that is the predicate to a retaliation claim]; *see also, Joseph v. Price Costco*, 100 Fed.Appx. 857, 2004 WL 1292686 (2d Cir. 2004) [none of the exceptions to the rule requiring the exhaustion of remedies applied when plaintiff filed a detailed EEOC charge, yet failed to mention

---

[2] Some courts have since used the term "reasonably related" rather than "sufficiently related".  *See, e.g., Joseph v. Price Costco*, 100 Fed.Appx. 857, 2004 WL 1292686 (2d Cir. 2004).

the suspension which was the basis for plaintiff's discriminatory suspension claim].

Consideration of the factual allegations in the instant EEOC charge confirms that the first exception is inapplicable.  Plaintiff's EEOC charge contained a sole claim for disparate treatment, alleging that she was treated unlike her white peers on five occasions.  Specifically, Plaintiff complained that she was told she had eighteen (18) months to obtain her certification and was later told that she, in fact, had twelve (12) months to do so.  She further alleged that her counselor certification was placed in her mailbox instead of in a plaque as was done for the other counselors.  She alleged that she was "written up" on two occasions, once for taping her notice of certification to her office wall and once for having excessive work on her desk.  Lastly, Plaintiff alleged that she had not received a paycheck for failing to hand in a time card despite the fact that her supervisor had solicited time cards from her white peers.

The foregoing demonstrates that the requisite factual or legal nexus between the substance of the allegations contained in the administrative charge and the "new" cause of action is absent here.  Plaintiff's EEOC charge consists solely of a claim for race discrimination based on a number of alleged instances of disparate treatment.  The charge makes no mention of the alleged conduct which would serve as the basis for a claim of harassment or retaliation.  As such, the first exception is inapplicable.

The second and third exceptions are likewise inapplicable as both involve scenarios in which the plaintiff continued working for his or her employer after the filing of the EEOC charge.  Here, Plaintiff had been terminated long before she filed a charge with the EEOC.

In light of the foregoing, CCCS respectfully requests that Plaintiff's claim of harassment and retaliation be dismissed with prejudice to renewal.

**POINT II**

**PLAINTIFF HAS FAILED TO SET FORTH
A PRIMA FACIE RETALIATION CLAIM**

The foregoing establishes that Plaintiff's claim of retaliation is subject to dismissal due to the failure to exhaust her administrative remedies.  The retaliation claim is further subject to dismissal given that the instant Plaintiff cannot establish a *prima facie* case of retaliation.

The essential elements of a Title VII retaliation claim require proof that: (1) the plaintiff was engaged in an activity protected under Title VII; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the plaintiff was subjected to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken. *See, Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir.1997).

In the first instance, Plaintiff has not established that she engaged in a protected activity under Title VII.  Plaintiff testified that sometime in April, more than two months before she was terminated, she told Mr. Grady that she wanted him to "ease off" on alleged comments about CCCS's clientele.  Plaintiff testified that during that alleged conversation she did not specifically state that she was referring to comments about the clients' race or that she had perceived previous remarks to be racially derogatory.

The facts of the instant suit are similar to those presented in *Ruiz-Valera v. Association of the Bar of City of New York*, 91 Fed.Appx. 168, 2004 WL 234873 (2d Cir. 2004).  There, the plaintiff alleged that her termination was a retaliatory measure taken in response to her complaints to the defendant regarding her treatment from her superiors. The Second Circuit affirmed the district court's dismissal, holding that the plaintiff had not established that she made any complaint asserting that she had been subject to discrimination based upon her membership in a protected class.  *See*

8

*also, James v. Newsweek, Inc.,* 213 F.3d 626 (2d Cir. 2000) [In support of her retaliation claim, the plaintiff pointed to her testimony that the day before she was fired, she told a supervisor that she did not believe "her evaluation was fair" and that she was "going to seek justice". The Second Circuit affirmed the dismissal of the claim, holding that the plaintiff's veiled and ambiguous remark was insufficient to support the inference that she was complaining about alleged discrimination].

In this case, Plaintiff cannot establish that she made any complaint asserting that she had been subjected to discrimination based upon her membership in a protected class.  Rather, she testified that she made a single ambiguous request which was insufficient to support the inference that she was complaining about alleged discrimination.  As such, Plaintiff cannot satisfy the first element of a claim for retaliation.

The absence of the first element makes it difficult to assess the remaining elements, which are necessarily predicated on the first element's existence.  Nevertheless, the record is devoid of evidence tending to establish a nexus between her alleged ambiguous complaint to John Grady in April of 2002 and her eventual termination more than two months later.

 Once a plaintiff has made a *prima facie* case of discrimination or retaliation, the burden shifts to the defendant to provide a non-discriminatory explanation for its adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  The foregoing establishes that the instant Plaintiff cannot set forth a *prima facie* case of retaliation.  CCCS has, nonetheless, chronicled the performance deficiencies for which Plaintiff's employment was terminated and, as such, has come forward with a non-discriminatory explanation for terminating Plaintiff's employment.

Plaintiff's performance problems were first discovered in March of 2002, when Plaintiff became ill and was out of the office for an extended period of time.  It was then that Mr. Grady discovered that Plaintiff was not entering client information into the computer in a timely fashion. Mr. Grady discussed the problem with Plaintiff when she returned to work. Plaintiff agreed with Mr. Grady's assessment and advised that she would "try to do better".

The untimely entry of client information continued and, as such, became the subject of an unfavorable performance review in May of 2002.  In June of 2002, John Grady discovered files on Plaintiff's desk containing information which Plaintiff had again failed to timely enter into the computer.  As such, on June 27, 2002, Plaintiff was placed on a Performance Improvement Plan (PIP), which included a (30) day probationary period and required Plaintiff to "complete" her files (meaning that the client information was to be entered into the computer and transferred to data processing) within 48 hours. The PIP provided that, if any portion of the improvement plan was violated during the probationary period, discipline, which included "separation from employment" could occur.

Shortly after Plaintiff was given the PIP, Mr. Grady asked Plaintiff to prepare a weekly report providing an accounting of the number of files for which Plaintiff was responsible.  Mr. Grady reviewed the files on Plaintiff's desk, was unable to account for a number of the files contained in the weekly report and concluded that Plaintiff had locked incomplete files in her desk drawer.  It was then that CCCS made the decision to terminate Plaintiff's employment and they did so the following day.

The foregoing establishes that Plaintiff had on-going performance deficiencies about which she had been counseled on more than one occasion.  When Plaintiff attempted to "cover-up" those performance deficiencies by locking incomplete files in her desk drawer, CCCS terminated Plaintiff's employment.  In light of the foregoing, CCCS has undoubtedly advanced a legitimate,

10

non-discriminatory reason for terminating Plaintiff's employment.

## POINT III

### PLAINTIFF HAS FAILED TO PRESENT PRIMA FACIE PROOF OF HARASSMENT WHICH WOULD RISE TO THE LEVEL OF A HOSTILE WORK AND, AS SUCH, HER CLAIM FOR HARASSMENT MUST BE DISMISSED

The foregoing (Point I) establishes that Plaintiff's claim of harassment is subject to dismissal given her failure to exhaust her administrative remedies. The following establishes that, even if we were to disregard the Plaintiff's failure to exhaust her administrative remedies, Plaintiff's claim for harassment must be dismissed nonetheless.

In order to prevail on a hostile work environment claim, a plaintiff must first show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002). A hostile work environment is created when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and creates an abusive working environment. *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)

Among the factors to be considered when analyzing a hostile work environment claim are the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The courts have held, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive" *Alfano v. Costello*, 294 F.3d at 374 (2d Cir. 2002); *quoting Perry v. Ethan Allen, Inc*., 115 F.3d 143, 149 (2d Cir.1997).

For instance, in *Negron v. Rexam, Inc.*, the Second Circuit held that the plaintiff's allegation that on a handful of occasions his coworker addressed him using a racial epithet (including once over the loudspeaker), were insufficient to establish a hostile work environment 104 Fed.Appx. 768, 2004 WL 1496878 (2d Cir. 2004).

In this case, Plaintiff's harassment claim is predicated upon the claim that Mr. Grady called her a "black bitch" on one occasion and made the following remarks at an unspecified date and time:

- "She must not know about hair weaves" - a comment allegedly made after one of Plaintiff's black clients left the office'

- "What is her PA number"- a comment allegedly made subsequent to the departure of one of Plaintiff's black clients;

- CCCS had no interest in doing a presentation for "those kind of people", a comment allegedly referring to a group called "This Way Up";

In her Interrogatory Responses, Plaintiff named John Grady, Sheryl Bowman, Pat Hauser, Cheryl McGinley, Linda Murawski, Jennifer Lindsay, Kathy Astletine and Gary Malone as witnesses. With respect to racially derogatory remarks that would give rise to a hostile work environment claim, Plaintiff's witnesses testified as follows:

- Kathy Astletine - never witnessed any remarks to Plaintiff by John Grady which were racially derogatory;

- Jennifer Lindsay - never heard John Grady make a derogatory remarks about black clients;

- Gary Malone - did not recall any derogatory remarks about black clients;

- Pat Hauser - never heard John Grady make any remarks about black persons and never heard remarks about people who lived on the south side;

- Cheryl McGinley - John Grady never made a racist remark in Plaintiff's presence.

However, even if we were to accept as true (for purposes of argument) that John Grady did make the foregoing remarks (which John Grady has expressly denied) and that those remarks were racially derogatory, the foregoing remarks do not give rise to a workplace permeated with

discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.  As such, Plaintiff's claim for harassment must likewise be dismissed.

## POINT IV

### PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES IS WHOLLY WITHOUT MERIT AND SHOULD BE DISMISSED AS A MATTER OF LAW

The foregoing establishes that Plaintiff's Complaint should be dismissed in its entirety given Plaintiff's failure to exhaust her administrative remedies and the absence of prima facie proof of retaliation or discrimination.  If, however, this Court were to deny any aspect of Defendant's motion for summary judgment, we respectfully request that Plaintiff's claim for punitive damages be dismissed with prejudice to renewal.

Title VII provides that a plaintiff may recover punitive damages where the plaintiff demonstrates that the defendant "engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). In order to establish malice or reckless indifference, a plaintiff must demonstrate that the employer discriminated in the face of a perceived risk that its actions would violate federal law. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); *see also, Luciano v. Olsten Corp.,* 110 F.3d 210, 219-20 (2d Cir.1997).

The instant record establishes that, at the time Plaintiff was hired, she received an employee handbook which set forth CCCS's policy against racial discrimination.  Plaintiff was aware of the procedure for filing a grievance for racial discrimination but never did so.  As such, plaintiff cannot present *prima facie* proof that CCCS engaged in a discriminatory practice with malice or with reckless indifference to her federally protected rights.  Accordingly, Plaintiff's claim for punitive damages should be dismissed.

13

**CONCLUSION**

In light of the foregoing, Plaintiff's Complaint should be dismissed in its entirety with prejudice to renewal.


Dated: October 15, 2004

                                 _____

                                 Lauren M. Miller
                                 Bar Roll No. 508658
                                 PINSKY & SKANDALIS
                                 Attorneys for Defendant
                                 State of New York
                                 Office and P.O. Address
                                 5790 Widewaters Parkway
                                 P.O. Box 250
                                 Syracuse, New York 13214-0250
                                 (315) 446-2384


TO:    George S. Mehallow
          Bar Roll No. 507261
          Attorney for Plaintiff
          2700 Bellevue Avenue
          Syracuse, New York 13219
          (315)478-1583