**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**Jackie K. Smith,**

                                        **Plaintiff,**

                                                                **5: 03-CV-1033**
                                                                 **(NAM/GJD)**

**v.**

**Consumer Credit Counseling Services**
**of Central New York**
                                        **Defendant.**

_____

APPEARANCES:                                        OF COUNSEL:

Office of George S. Mehallow                         George S. Mehallow, Esq.
2700 Bellevue Avenue
Syracuse, New York 13219
For Plaintiff

Office of Laurie G. Ogden                            John F. Pfeifer, Esq.
441 South Salina Street
Fourth Floor, Box 364
Syracuse, New York 13202

Pinsky & Skandalis Law Firm                          Lauren M. Miller, Esq.
5790 Widewaters Parkway
P.O. Box 250
Syracuse, New York 13214
For Defendant

Hon. Norman A. Mordue, D.J.:

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

         Jackie K. Smith ("plaintiff") commenced this action against her former employer

Consumer Credit Counseling Services ("defendant" or "CCCS") for racial discrimination in

1

employment under 42 U.S.C.A.§2000e.  Defendant moves for summary judgment pursuant to *Fed.R.Civ.P.56*, though the procedural posture of defendant's moving papers suggest defendant seeks dismissal of the complaint pursuant to *Fed.R.Civ.P. 12(b)(1)* or *12(b)(6)*.  Considering, however, that no prejudice results to plaintiff, who had adequate notice and opportunity to respond, the procedural designation of defendant's motion is immaterial.  Defendant argues that plaintiff's complaint, when read liberally, asserts causes of action for retaliation and racial harassment only and does not contain a cause of action for, or any allegations supportive of, a claim for race discrimination based on disparate treatment.  Defendant further argues that since plaintiff's complaint filed with the Equal Employment Opportunity Commission (the "EEOC") contained a claim for race discrimination only, plaintiff failed to exhaust her administrative remedies with respect to her racial harassment and retaliation claims and, accordingly, this Court does not have subject matter jurisdiction to consider them.[1]  Alternatively, defendant argues that plaintiff cannot establish a prima facie case either for retaliation or racial harassment.  In response, plaintiff maintains that her complaint properly states a cause of action for race discrimination based on disparate treatment.  Furthermore, plaintiff argues that her racial harassment claim is properly before this Court because it "reasonably relates" to her EEOC complaint concerning race discrimination.

## II.    FACTUAL BACKGROUND

Defendant is a not-for-profit community service organization that provides free and confidential financial counseling and education for Central and Upstate New York residents.  In

_____

[1] In her response papers, plaintiff explicitly stated that she is not asserting a claim for retaliation.  Accordingly, the Court will not address defendant's arguments pertaining to plaintiff's alleged retaliation claim.

May of 1996, CCCS hired plaintiff, an African-American woman, as a Customer Service Representative.  In April of 2001, plaintiff applied for and was promoted to the position of Credit Counselor.  Upon plaintiff's promotion, Mr. John Grady became her immediate supervisor.

Plaintiff alleges that Mr. Grady subjected her to racial remarks in the following way: (1) Mr. Grady stated "she must know about hair weaves" - a comment made after one of plaintiff's African-American clients left the office; (2) after the departure of one of plaintiff's African-American clients, Mr. Grady inquired "what is her PA [meaning public assistance] number"; and (3) Mr. Grady stated that CCCS had no interest in doing presentation for "those kind of people," according to the plaintiff meaning black people.  Plaintiff allegedly asked Mr. Grady to stop making inappropriate remarks.  Plaintiff contends that after she made this request, Mr. Grady began to treat her in an unfavorable manner.

At some point in time plaintiff was contacted by a program called "This Way Up" - a program for people on Public Assistance designed to assist them with resume writing and interviewing skills.  The program asked plaintiff to conduct a presentation on budgeting and money management issues.  Plaintiff was willing to give the presentation but was prohibited from doing so by Mr. Grady on the grounds that she did not have sufficient qualifications.  According to plaintiff, Mr. Grady also stated that CCCS had no interest in making a presentation  "for those kind of people."   Plaintiff interpreted this remark to mean "black people."

Once plaintiff became a Credit Counselor, Mr. Grady informed plaintiff that she had 18 months to obtain her Credit Counselor's certification.  Around November of 2001, however,

3

plaintiff was told that she had to obtain the requisite certification within a 12 months period, i.e., by April of 2002.[2]  In order to obtain the certification in question, plaintiff had to pass six separate tests.  Accordingly, plaintiff scheduled to take two tests in the months of January, February, and March.  In March, however, plaintiff became sick and was unable to take the tests scheduled for that month.  As a result, defendant gave plaintiff a 30-day extension to complete the work on her certification.  Eventually, plaintiff became certified on May 15, 2002.

Subsequently plaintiff received her Credit Counselor's certificate through inter-office mail in a plain manila envelope.  Plaintiff complained about the manner in which the certificate was presented to her.  According to plaintiff, other counselors received their certificates in a plaque and during a social gathering of CCCS employees.  Plaintiff believed that defendant failed to recognize her properly for her achievement and treated her unfairly in comparison with her white co-workers.

Plaintiff wished to publicly display her certificate and, accordingly, taped it to one of the walls in her office.  A few days later, plaintiff along with her co-workers, received a memorandum reminding the CCCS employees that it was against company's policy to tape paper items or calendars to the office walls.[3]  Upon receipt of this memorandum, plaintiff went to Mr. Grady's office and demanded that she be given a plaque for her certificate.  Mr. Grady

---

[2]Record establishes that defendant made the same request of plaintiff's white co-worker, Mr. Gary Malone who commenced his employment as a Credit Counselor at the same time as plaintiff.

[3]Defendant maintains that it had a longstanding policy of prohibiting employees from taping items to their office walls and that such policy was enforced uniformly.  The record contains testimony of at least one white employee who had been asked to take down a calendar taped to the walls in his office.

4

complied with plaintiff's demand.[4]  Plaintiff subsequently displayed the plaque in her office
without any further incident.

In April of 2002, Mr. Grady became concerned that plaintiff was not fully complying
with company's guidelines for Credit Counselors.  Specifically, Mr. Grady believed that
plaintiff was not entering clients' financial information into the computer within 48 hours of
obtaining it from them via scheduled telephone interviews.  Mr. Grady counseled plaintiff with
respect to this issue and plaintiff agreed that she needed to improve her performance.

According to Mr. Grady, however, plaintiff's performance did not subsequently
improve.  As a result, in May of 2002, plaintiff received an unfavorable performance review.
Specifically, she was criticized for having problems with deadlines and being unable to
complete her assignments in a timely manner.  Plaintiff strongly disagreed with this assessment
of her performance and felt that she was unfairly denied a salary increase.

On one occasion in June plaintiff did not receive her paycheck on time allegedly
because she did not submit her time-card by the end of a business day on Friday as required by
company's new policy.[5]  Specifically, plaintiff complained about being treated in a
discriminatory manner in comparison with her white co-workers.  According to plaintiff, Mr.

---

[4]Defendant contends that plaintiff's certificate was not initially placed in a plaque
because at the time plaintiff received her certificate, defendant, as it frequently does, ran out of
plaques.

[5] Even though the old policy required employees to submit their time-cards by the end of
the business day on Friday, many employees submitted their time-cards by Monday morning
without suffering any penalty for late submission.  At some point in time, however, CCCS
decided to strictly enforce the rule and advised their employees of such intention.  Plaintiff was
informed of the necessity of submitting her time-cards in timely manner on two separate
occasions.  Nevertheless, plaintiff continued to submit her time-cards by Monday morning,
rather than by end of a business day on Friday.

Grady collected time-cards from all of his white subordinates, but never requested that plaintiff submit a time-card.

Plaintiff decided to file a grievance with defendant concerning the time-card issue. On June 26, 2002, plaintiff informed Cheryl Bowman, CCCS's Human Resources Manager, that she desired to file a grievance and requested a grievance form for that purpose.[6] It appears that around the same time, Mr. Grady discovered that the number of client files for which plaintiff had failed to timely enter client information had increased since the time of her May 22, 2002 performance evaluation. Plaintiff maintained that the increase in the number of incomplete client files was due to her voluntary acceptance of additional client files from two counselors who recently departed from the CCCS. Nevertheless, on June 27, 2002, plaintiff was placed on a Performance Improvement Plan (the "PIP"). The PIP clearly stated that if any of its portions were violated during the thirty day probationary period, disciplinary action up to and including employment separation could result. Plaintiff believed that she was unfairly subjected to the PIP and, accordingly, refused to sign the PIP.

On July 2, 2002, Mr Grady noted that the client files that had been on top of plaintiff's desk could not be located. While searching for client files, Mr. Grady attempted to look in plaintiff's desk drawer and noted that it was locked.[7] Mr. Grady believed that plaintiff locked

---

[6]The record is not clear with respect to when plaintiff asked for the grievance form. During her deposition plaintiff first testified that she requested the form in question on June 26, 2002, which would be *before* she was placed on the PIP. Later on, however, plaintiff testified that she asked for the form a week or two *after* she was placed on the PIP. Considering that the grievance form is dated June 27, 2002, the Court assumes that plaintiff asked for the form in question on June 27, 2002 or earlier.

[7]According to defendant, counselors are not permitted to lock client files in their desk because due to the time-sensitive nature of the work, client information must be accessible to

her desk in order to hide her incomplete work.  Mr.Grady maintains that it intended to confront

plaintiff about her locked desk the following morning and intended to terminate her

immediately if the suspicion that she had incomplete files in her desk was indeed confirmed.

On July 3, 2002, plaintiff turned in her grievance about not getting her paycheck on time

to the Human Resources Manager.  In her grievance plaintiff stated that she believed that she

was treated in a discriminatory manner.  On the same day, Mr. Grady asked plaintiff to unlock

her desk drawer and discovered that the missing files were in fact located in plaintiff's desk.

Mr. Grady, along with the Executive Director of CCCS, reviewed the files and determined that

the client financial information had not been entered into a computer despite the fact that some

of the relevant information had been obtained a month earlier.  Defendant immediately

terminated plaintiff for alleged deficiencies in her performance.  Plaintiff alleges that as she was

clearing out her desk she overhead Mr. Grady referring to her as a "black bitch" to one of

plaintiff's co-workers.

**III.    DISCUSSION**

**A.    Whether Plaintiff Exhausted her Administrative Remedies with Respect to her Racial Harassment Claim?**

Defendant argues that plaintiff's complaint, when read liberally, asserts a cause of action

for racial harassment only.  Defendant further argues that since plaintiff's EEOC complaint

contained no other claim than a claim for race discrimination, plaintiff failed to exhaust her

administrative remedies with respect to her racial harassment claim and, accordingly, this Court

does not have subject matter jurisdiction to consider it.  In response, plaintiff maintains that her

---

anyone in the department in the event of the particular employee's absence.  Most of the CCCS's
employees who were deposed in this case testified that they were not aware of such a policy.

racial harassment claim is properly before this Court because it "reasonably relates" to her EEOC complaint concerning race discrimination based on disparate treatment.

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Hous. Preservation,* 990 F.2d 1397, 1401 (2d Cir. 1993) (*citing Stewart v. United States Immigration and Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir.1985)). The purpose of the exhaustion requirement is to provide notice to the employer and to encourage conciliation and voluntary compliance. *See id.* at 1401; *see also Snell v. Suffolk County*, 782 F.2d 1094, 1101 (2d Cir.1986).

Plaintiff's EEOC charge asserts a claim for racial discrimination based on disparate treatment.[8]  Plaintiff supports her claim with the following factual allegations:

(1) plaintiff was initially informed that she had eighteen months to obtain her professional certification, but was later requested to do so within a 12 month period;

(2) plaintiff's counselor certification was placed in her mailbox rather than presented to her in a plaque at the social gathering for CCCS employees as was done for the white counselors;

(3) plaintiff was written up for taping her counselor certification to the wall;

(4) plaintiff was unfairly denied a salary increase in May of 2002;

(5) plaintiff was written up for having excessive work on her desk which, plaintiff alleges, she had voluntarily accepted due to the departure of two other counselors;

---

[8]Plaintiff's EEOC charge reads in relevant part as follows: "As the only black member of the respondent's counseling staff in Syracuse, NY, I was afforded different treatment than my white peers by John Grady, Manager of the Syracuse Office."

(6) plaintiff was the only counselor whose paycheck was withheld for failure to timely submit a time card; and

(7) plaintiff was terminated from her employment within one hour after submitting to defendant her grievance with respect to not receiving her paycheck in a timely manner.

The Court reads plaintiff's EEOC charge as stating a single claim for race discrimination based on desparate treatment. The Court finds nothing in the EEOC complaint that would alert the EEOC to the presence of or provide any allegations supportive of a claim for racial harassment. Inasmuch as a racial harassment charge was never presented to the EEOC, this Court is without jurisdiction to consider that claim unless such claim is "reasonably related" to plaintiff's claim of race discrimination.

The Second Circuit has "recognized three kinds of situations where claims not alleged in the EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *See Butts*, 999 F.2d at 1402. The conduct alleged in a complaint is reasonably related to conduct described in an EEOC charge when it: (1) is within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) would constitute retaliation for filing a timely EEOC charge; or (3) constitutes further incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge. *See Butts*, 990 F.2d at 1402-03.

Of these three exceptions, only the first arguably has relevance in the present case.[9]

---

[9]The Court agrees with defendant in that second and third exceptions are inapplicable in the present case. Both exceptions contemplate a situation in which plaintiff continues working for his or her employer *after* the filing of the EEOC charge. Here, the plaintiff had been terminated *before* she filed such a charge. Accordingly, neither second nor third exception applies to plaintiff's case.

This particular exception has been called a form of "loose pleading" and is based on the recognition that EEOC charges are frequently filed by complainants without the aid of attorney and with the primary purpose of alerting the EEOC to the discrimination claimed by the complainant. *See Butts*, 990 F.2d at 1402. Accordingly, claims not included in the EEOC charge may still be presented in federal court when the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *See id.* (citations omitted).

In determining whether the conduct complained of in federal court would fall within the scope of an EEOC investigation, the courts are cautioned to focus on the factual allegations of the original EEOC charge rather than on any legal theories stated therein. *See Bridges v. Eastman Kodak Co.*, 1020, 1026 (S.D.N.Y. 1993). As a general rule, where plaintiff alleges a specific category of discrimination in an EEOC charge and subsequently files a complaint in federal court alleging additional grounds of discrimination, new allegations will be considered by the court only if the facts alleged in the EEOC complaint would have been sufficient in the first place to trigger EEOC investigation on those grounds. *See Mitchell v. Fab Indus. Inc.*, 1996 WL 417522, at *4 (S.D.N.Y. 1996); *see also McGuire v. U.S. Postal Serv.*, 749 F.Supp. 1275, 1287 (S.D.N.Y. 1990) ("Judicial claims which serve to amplify, clarify or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for requested judicial review are not appropriate.").

Unlike her EEOC complaint, plaintiff's complaint to this Court asserts a claim for racial harassment. In general, to state a claim for racial harassment, a plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's

employment. *See Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). Thus, in order for plaintiff's racial harassment claim to be "reasonably related" to her original claim of race discrimination, plaintiff must show that her original claim contained factual allegations supportive of her new claim for racial harassment - i.e., facts demonstrating that she was subject to racial remarks or racially hostile actions.

Plaintiff does not meet the standard outlined above. The incidents underlying plaintiff's racial harassment claim are absent from the EEOC complaint.[10] Rather the EEOC complaint solely alleges incidents underlying plaintiff's disparate treatment claim, which are notably distinct from incidents underlying plaintiff's racial harassment claim. Accordingly, the investigation into plaintiff's charges of race discrimination would not fall within the scope of, and could not reasonably be expected to grow into, an investigation of a claim of racial harassment. *See Ghose v. Century 21, Inc.*, 108 F.Supp.2d 373, 376 (S.D.N.Y. 2000) (hostile work environment claim is not reasonably related to claim of race discrimination); *Ige v. Command Sec. Corp.*, 2002 WL 720944, at *6 (S.D.N.Y. 2002) (investigation into underlying incidents of plaintiff's disparate treatment claim would not lead an investigator to inquire about a claim of hostile work environment); *see also Findlay v. Reynolds Metals Co., Inc.*, 82

---

[10] In her complaint to this Court, plaintiff claims that she "was subjected to a series of derogatory comments by John Grady." Plaintiff further claims that she "requested that Mr. Grady not make the racial comments" and that "Mr. Grady refused to stop making the racial comments." Upon reviewing the record, it is the Court's understanding that plaintiff relies on the following incidents to substantiate her claim of racial harassment: (1) on one occasion Mr. Grady called plaintiff a "black bitch"; (2) Mr. Grady stated "she must know about hair weaves" - a comment made after one of plaintiff's African-American clients left the office; (3) after the departure of one of plaintiff's African-American clients, Mr. Grady inquired "what is her PA [meaning public assistance] number"; (4) Mr. Grady stated that CCCS had no interest in doing presentations for "those kind of people," according to the plaintiff meaning black people. None of these factual allegations appeared in plaintiff's complaint to the EEOC.

11

F.Supp.2d 27, 34 (N.D.N.Y. 2004) (investigation into a disparate treatment claim would not have grown out of EEOC investigation of hostile environment charges because incidents underlying each claim were distinct).  Because plaintiff's disparate treatment and racial harassment claims "rely on different facts and embody different legal theories," an investigation into the former could not reasonably be expected to grow into an investigation of the latter.  *See Porter v. Texaco, Inc.*, 985 F.Supp. 380, 384 (S.D.N.Y. 1997).  Accordingly, plaintiff's Title VII racial harassment claim must be dismissed as unexhausted.

**B.      Whether Plaintiff's Complaint States a Cause of Action for Race Discrimination Based on Disparate Treatment?**

Defendant argues that plaintiff's complaint does not contain a cause of action for, or any allegations supportive of a claim for discrimination based on disparate treatment.  In response, plaintiff maintains that her complaint does assert such a claim.[11]  Besides making these general assertions, the parties had not briefed the issue of whether the complaint in the present case can be read to state a cause of action for race discrimination based on disparate treatment.

Prior to the Supreme Court's decision in *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002), the Second Circuit required a plaintiff asserting a Title VII discrimination claim to plead evidence of a *prima facie* case under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 782, 802 (1793), in order to survive a 12(b)(6) motion to dismiss.  To meet this burden, a plaintiff was required to show (1) membership in a protected class; (2) satisfactory

--------

[11]Plaintiff does not explicitly argue that her complaint properly gives defendant notice of or states a cause of action for race discrimination based on disparate treatment.  In her motion papers, however, plaintiff does argue that she had established a prima facie case for race discrimination.   This argument, of course, presupposes that she had asserted a cause of action for race discrimination in her complaint.

job performance; (3) an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir.2000).

In *Swierkiewicz*, however, the Supreme Court overturned the Second Circuit's heightened pleading standard for Title VII cases, noting the "[t]he prima facie case under *McDonnell Douglas ...* is an evidentiary standard, not a pleading requirement."  *Swierkiewicz*, 534 U.S. at 510.  The Court held that, pursuant to the notice pleading system contemplated by Federal Rule of Civil Procedure 8(a)(2), a Title VII complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* (quoting *Fed.R.Civ.P.* 8(a)(2)).

Upon reading plaintiff's complaint, the Court concludes that it gives defendant a fair notice of the basic elements of plaintiff's race discrimination claim.  Her complaint states that "plaintiff is an African American" and as such is a member of a protected class.  The plaintiff further states that "plaintiff was promoted to the position of Credit Counselor in May 2001." The Court views this allegation as indicating that at least initially plaintiff was qualified for her position.  Plaintiff's complaint further alleges that she "was subjected to a series of racial derogatory comments by John Grady."  The complaint also alleges that plaintiff  "was terminated from her position with defendant in July of 2002 for failure to turn in a time card" and that "plaintiff believes that the reason for her termination was a pretext for race discrimination."  The Court reads these allegations as suggesting that the true reason for plaintiff' termination was John Grady's a racial animus toward plaintiff rather than her minor offense of failing to submit her timecard in a timely manner.  The allegations mentioned above,

together with the fact that plaintiff's complaint states that she "filed a timely charge of *race discrimination* with the Equal Opportunity Commission," give defendant adequate notice of her claim "and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.  Since the Court finds that plaintiff's race discrimination claim meets the liberal pleading requirements set forth in *Swierkiewicz,* the Court cannot dismiss plaintiff's complaint in its entirety pursuant to defendant's request.

Furthermore, the Court notes that even if defendant moved for summary judgment on plaintiff's race discrimination claim, the Court would not be able to grant such a motion because material issues of fact continue to exist with respect to this claim.  For example, the record does not permit this Court to conclude as a matter of law that plaintiff was prohibited from making a presentation for the "This Way Up" program because she lacked requisite qualifications.  Furthermore, the issue of material fact continues to exist with respect to whether the excessive number of files on plaintiff's desk was due to her voluntarily assuming work of two counselors who recently departed from CCCS or her work performance was indeed deficient.  As a result of these and other material issues of facts the Court cannot dismiss plaintiff's race discrimination claim.

## IV.    CONCLUSION

For the forgoing reasons it is hereby

ORDERED that defendant's motion for summary judgment is granted with respect to plaintiff's racial harassment claim; and it is further

ORDERED that defendant's motion for summary judgment is otherwise DENIED; and it is further

ORDERED that plaintiff may proceed further with respect to her race discrimination claim.

IT IS SO ORDERED.

Dated: August 1, 2005
   Syracuse, New York

Norman A. Mordue
U.S. District Judge

15